## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

| | | |
|---|---|---|
| MICKI BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV623-071 |
| | ) | |
| WARDEN ADAMS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Micki Brown filed this case against multiple defendants arising out of events that allegedly occurred at Smith State Prison.   *See generally* doc. 1.   The Court granted him leave to proceed *in forma pauperis*, doc. 3, and he returned the required forms, *see* docs. 4 & 5.   The Court, therefore, proceeds to screen his Complaint.   28 U.S.C. § 1915A.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff.   *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).

1

Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Brown is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

## I. Factual Allegations

Brown's Complaint concerns events that occurred at Smith State Prison and names as defendants several guards, Sharpe, Weston, Edwards, Hreha, Flowers, Shepard, and Grant, and Warden Brian Adams. *See* doc. 1 at 2-3. Brown's factual allegations begin with an incident involving Defendant Grant in April 2022. *See id.* at 4. He alleges that Grant told him to take "a count sheet" from her back pocket and he complied. *Id.* Other officers and a "Warden McFarlane" accused Brown of "grabbing" Grant's buttocks. *Id.* He was placed in segregated confinement, despite his protestations of innocence. *Id.* at 5. He alleges that he was "found guilty" in the subsequent disciplinary proceeding, but he was not provided an opportunity to be heard. *Id.* Apparently in consequence of that finding, he was "placed in a program call[ed] the 'O.U.T. Program' . . . which is a 9 month segregated restricted

housing unit." *Id.* He alleges that, after he had been placed in segregation, Grant provided him with "a signed statement" recanting her allegations that he grabbed her buttocks. *Id.*

Brown also alleges several use-of-force incidents. The first involved Defendants Hreha and Grant, and another officer, Arthur, not named as a defendant. *See* doc. 1 at 6. He alleges that, at an unspecified time, Hreha "choked and punched" him while Arthur and Grant observed. *Id.* The second incident apparently occurred on October 5, 2022. *Id.* Defendants Weston and Sharpe escorted Brown to his cell in handcuffs. *Id.* When he extended his hands through the flap in the cell door for the officers to remove the handcuffs, Weston released one, and Sharpe "stated punching [his] arm with handcuffs secured against her fist like brass knuckles." *Id.* at 6-7. Weston then "dry stun[ned] him." *Id.* at 7. He alleges that Defendants Edwards and Hreha observed the incident and failed to intervene. *Id.* Weston and Sharpe then refused to take him for medical attention. *Id.* After several days, he was transferred to Coastal State Prison for medical attention, where he was diagnosed with "nerve damage." *Id.* at 8. He

3

alleges that he reported the incidents to Defendant Flowers, but Flowers took no action.   *Id.*

Brown next alleges that he was subjected to retaliation for complaints about his treatment.   First, he alleges, somewhat vaguely, that Sharpe "placed [him] on a higher phase [of the segregated confinement program] instead of remaining [him] on the same phase or lowering [him]."   Doc. 1 at 9.   Shepard subsequently informed him that she had interfered in the investigation of a grievance in retaliation for his complaints.   *Id.*

## II.   **Improper Defendant**

There is no factual allegation implicating Defendant Adams' participation in, or even awareness of, the events alleged in the Complaint.   *See* doc. 1 at 4-9.   Although Brown characterizes his claim against Adams as "deliberate indifference," *id.* at 12, the lack of any allegation suggesting Adams had subjective knowledge of the events is fatal to such a claim.   *See, e.g., Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("[I]mputed or collected knowledge cannot serve as the basis for a claim of deliberate indifference[;] . . . [e]ach individual [d]efendant must be judged separately and on the basis of what that

person knows." (citations omitted)).   The more plausible construction of the Complaint is that Brown seeks to hold Adams liable in his supervisory capacity.   However, such liability does not exist under § 1983.   *See Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) (citing *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)) ("Section 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or *respondeat superior*.").   Brown's claims against Defendant Adams should, therefore, be **DISMISSED**.

## III.   Injunctive Relief

Brown seeks an "injunction order" which would address the alleged improprieties in the disciplinary process.   *See* doc. 1 at 13.   However, he explicitly seeks that relief against the Georgia Department of Corrections, which is not a party to this case.   *See id.*   "[I]t is axiomatic that courts may only enjoin parties before the court," and the general rule is that "a court may not enter an injunction against a person who has not been made a party to the case before it."   *E.A. Renfroe & Co., Inc. v. Moran*, 338 F. App'x 836, 838-39 (11th Cir. 2009) (internal quotation marks and citations omitted).   The Court might permit him to amend, if the only defect in his claim were that he failed to name the proper

5

defendant.   *See, e.g., Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015).   However, as the United States District Court for the Middle District of Florida has succinctly stated: "Federal courts are not appellate venues for prison disciplinary proceedings."   *Denson v. Dixon*, 2023 WL 5200482, at *9 (M.D. Fla. Aug. 14, 2023).   "Moreover, expungement of a prison disciplinary action is relief obtainable in a habeas action, not in a civil rights case."   *Hoffmann v. McCray*, 2019 WL 3413536, at *11 (M.D. Fla. July 29, 2019).   Since any amendment of his claims for injunctive relief to name the proper defendant appear futile, no such opportunity is required.   *Jenkins*, 620 F. App'x at 711 ("[A] district court need not allow amendment if the amended complaint would still be subject to dismissal.").   Brown's requests for injunctive relief should, therefore, be **DISMISSED**.

## IV.   Excessive Force

It is well-settled that "the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."   *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotation marks, alteration, and citation omitted); *see also Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019).   "In considering an Eighth

Amendment excessive force claim, [the court] must consider both a subjective and an objective component: (1) whether the officials acted with a sufficiently culpable state of mind, and (2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Johnson v. Moody*, 206 F. App'x 880, 883 (11th Cir. 2006) (internal quotation marks, alterations, and citation omitted).   Moreover, officers who witness excessive force and fail to intervene may be liable for their failure.   *See, e.g., Jackson v. Catanzariti*, 2019 WL 4874809, at *11 (S.D. Ga. Oct. 2, 2019) (discussing law applicable to failure to intervene in excessive force cases).   While Brown's allegations concerning the two incidents do not establish any defendant's culpable intent, they are sufficient to be served, upon defendants Sharpe, Weston, Edwards, Hreha, and Grant.

## V.   Deliberate Indifference to Serious Medical Needs

Brown's allegations that he was not provided with medical care after the October use-of-force incident implicate a deliberate indifference claim.   *See* doc. 1 at 6-7.   To offend the Eighth Amendment, a government official must display "deliberate indifference to the serious medical needs of prisoners . . . "   *Estelle v. Gamble*, 429 U.S. 97, 104

(1976).   This requires that (1) the prisoner suffered a sufficiently serious medical need; (2) to which the defendants were deliberately indifferent; (3) resulting in an injury.   *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).   Whether a serious medical need existed is an objective standard.   *Milton v. Turner*, 445 F. App'x 159, 161-62 (11th Cir. 2011). However, whether defendants were deliberately indifferent is subjective and each defendant is "judged separately and on the basis of what that person knows."   *Burnette v. Taylor*, 33 F.3d 1325, 1331 (11th Cir. 2008). To allege deliberate indifference, a plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."   *Youmans v. Gagnon*, 62 F.3d 557, 564 (11th Cir. 2010).

Brown's allegations are not sufficiently clear to support a deliberate indifference claim.   First, although he alleges that he was ultimately diagnosed with "nerve damage," and suffered a lack of sensation in his hand, it is unclear what symptoms, other than discomfort, he suffered in the immediate aftermath of the incident.   *See* doc. 1 at 7 (stating that he "started to shake").   The fact that he was "dry stun[ned]" does not, alone, allege an objectively serious medical need.   *See, e.g., Edgar v. Brunson,*

2024 WL 42266, at*13 (M.D. Ala. Jan. 3, 2024) (in the absence of an alleged injury, "the fact that [plaintiff] was tased does not amount to a serious medical need . . . ."). Even assuming that the numbness and "nerve damage" would constitute serious medical needs, there is no allegation that any defendant knew of those symptoms immediately after the incident, when they allegedly refused to take him for a medical evaluation. Although the claim is not sufficiently clear, the Court cannot definitively conclude that he could not amend his Complaint to sufficiently allege both an objectively serious medical need and some defendant's subjective deliberate indifference to that need. He is, therefore, entitled to an opportunity to amend the claim. *Jenkins*, 620 F. App'x at 711.

## VI.  Due Process

Brown's allegations concerning the disciplinary process which resulted in his assignment to segregated confinement implicate, as he recognizes, a Fourteenth Amendment due-process claim. *See* doc. 1 at 11. To be sure, prisoners are afforded due-process protections in the administration of discipline. *See, e.g., Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1346 (11th Cir. 2016). "But for an inmate to be entitled to those

safeguards, he must have an interest sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to the minimum procedures appropriate under the circumstances and required by the Due Process Clause." *Id.* (internal quotation marks, alterations, and citation omitted). Such a liberty interest arises in two circumstances: (1) when the restraint exceeds the imposed sentence "in . . . an unexpected manner," and (2) when the change in the conditions of confinement "imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* (internal quotation marks and citation omitted). Courts have rejected due-process claims where inmates were held in segregated confinement for years. *See Morefield v. Smith*, 404 F. App'x 443, 446 (11th Cir. 2010) ("While [plaintiff's] four-year confinement in administrative segregation was lengthy, it did not tip the balance in favor of establishing a liberty interest"). Since Brown does not allege that the conditions in segregated confinement were "atypical and significant," he fails to allege a sufficient liberty interest to support his due process claim against Grant. *See* doc. 1 at 11. He is, however,

entitled to an opportunity to amend that claim. *Jenkins*, 620 F. App'x at 711.

Brown's due process claim against Defendants Flowers and Shepard based on Flowers' alleged failure to investigate Brown's report of excessive force is irretrievably flawed. The Eleventh Circuit has explained that there is no substantive or procedural due process right to an investigation of excessive force. *See Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (arrestee "has no substantive right of any kind to an investigation of her excessive force complaint," and noting the lack of "any federal or state court decision, statute, regulation or other source of law that gives [arrestee] an entitlement to an internal investigation . . . of her complaints of police brutality."); *see also, e.g., Raby v. Reaves-Phams*, 2023 WL 8879762 at *5 (M.D. Ga. Dec. 21, 2023) ("Prisoners do not have a constitutional right to an investigation of any kind by government officials," and collecting cases). Since Brown has no right to an investigation, he fails to state any claim against Flowers and Shepard for the allegedly defective investigation. *See* doc. 1 at 11-12. That claim should, therefore, be **DISMISSED**. Since it is the only claim

asserted against Flowers and Shepherd, they should be **DISMISSED** from this case.

## VII.  First Amendment Retaliation

The First Amendment forbids prison officials from retaliating against prisoners for exercising their First Amendment rights.  *Thomas v. Evans*, 880 F.2d 1235, 1241 (11th Cir. 1989).  "To state a [F]irst [A]mendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right."  *Id.* at 1242.  Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising [his First Amendment rights]."  *Id.*  "To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal connection between the retaliatory action . . .  and the protected speech."  *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (internal quotations and alterations omitted); *see also Smith v. Fla. Dep't of Corr.,* 713 F.3d 1059, 1063 (11th Cir. 2013) (identifying elements for a retaliation claim).  Recognizing "both the near inevitability of decisions

and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with . . . particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (Calabresi, J.), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020); *see also, e.g., Skinner v. Sproul*, 2015 WL 196191, at *7 (M.D. Ga. Jan. 14, 2015).

Brown alleges that Defendants Weston and Sharpe wrote disciplinary reports, at least in part, "because Plaintiff have a history of filing law suits." Doc. 1 at 10. He does not, however, include any allegations about the nature of the allegedly retaliatory disciplinary reports. *See id.* at 4-9. He, perhaps, alludes to them when he states he was "found . . . guilty on both DR's received on October 5, 2023," *id.* at 9, and attaches copies of what appear to be the reports themselves, *id.* at 23-24. He also does not refer to any prior lawsuit. *See generally id.* While the Court cannot definitively conclude that Brown could not state a First Amendment retaliation claim, his vague allegations are insufficient to plead any of the required elements, given the "particular

care" with which the Court examines such claims.   He is entitled to an opportunity to amend the claim.   *Jenkins*, 620 F. App'x at 711.

In summary, Brown's claims against Warden Adams, Flowers, and Shephard, and his request for injunctive relief should be **DISMISSED**. This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.   Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.   The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).   The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.   11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Brown's excessive force claim will be served upon Sharpe, Weston, Edwards, Hreha, and Grant, as discussed below.   His remaining allegations, including alleged deliberate indifference to his serious medical needs, denial of due process, and First Amendment retaliation, are insufficient to state any claim upon which relief may be granted, but might be amendable.   He is, therefore, **DIRECTED** to submit an Amended Complaint clarifying those allegations by no later than February 6, 2024.   To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)).   Brown is advised that his amended complaint will supersede the current complaint and therefore must be complete in itself.   *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982).

Since the Court approves for service Brown's excessive force claim against Sharpe, Weston, Edwards, Hreha, and Grant, a copy of Plaintiff's Complaint, doc. 1, and a copy of this Order and Report and

Recommendation shall be served upon Sharpe, Weston, Edwards, Hreha, and Grant by the United States Marshal without prepayment of cost. The Court **DIRECTS** the Clerk of Court to serve a copy of this Order upon Plaintiff.   The Court also provides the following instructions to the parties that will apply to the remainder of this action.

### INSTRUCTIONS TO ALL DEFENDANTS IN THIS ACTION

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs service be effected by the United States Marshal.   Fed. R. Civ. P. 4(c)(3).   In most cases, the marshal will first mail a copy of the complaint to a defendant by first-class mail and request the defendant waive formal service of summons.   Fed. R. Civ. P. 4(d); Local R. 4.5.   A defendant has a duty to avoid unnecessary costs of serving the summons, and any defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.   Fed. R. Civ. P. 4(d).   Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date the marshal sent the request for waiver.   Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that any Defendant in this action is granted leave of court to take the deposition of Plaintiff upon oral examination.   Fed. R. Civ. P. 30(a)(2).   Defendants are further advised the Court's standard 140-day discovery period will commence upon the filing of the last answer.   Local R. 26.1.   Defendants shall ensure all discovery, including Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

If a Defendant takes the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.   As Plaintiff will not likely attend such a deposition, the Defendant taking the deposition must notify Plaintiff of the deposition and advise him that he may serve on that Defendant written questions Plaintiff wishes to propound to the witness, if any.   Defendants shall present such questions to the witness in order and word-for-word during the deposition.   Fed. R. Civ. P. 30(c).   Plaintiff must submit the questions in a sealed envelope within 10 days of the notice of deposition.

## INSTRUCTIONS TO PLAINTIFF

Plaintiff is charged with the responsibility of **immediately** informing this Court and defense counsel of any change of address during

the pendency of this action.   Local R. 11.1.   Plaintiff's failure to notify the Court of a change in his address **may result in dismissal of this case**.

**IT IS FURTHER ORDERED** that Plaintiff shall serve a copy of every pleading or other document submitted for consideration by the Court on each Defendant (or, if appearance has been entered by counsel, the Defendant's attorney).   Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to each Defendant or the Defendant's counsel.   Fed. R. Civ. P. 5.   "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number."   Fed. R. Civ. P. 10(a).

Plaintiff has the responsibility for pursuing this case.   For example, if Plaintiff wishes to obtain facts and information about the case from a Defendant, Plaintiff must initiate discovery.   *See generally* Fed. R. Civ. P. 26 to Fed. R. Civ. P. 37.   The discovery period in this case will expire 140 days after the filing of the last answer.   Local R. 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this

time period.   Id.   Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.   Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.   See Fed. R. Civ. P. 33.   Interrogatories may be served only on a **party** to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are **not named** as a defendant.   Interrogatories are not to contain more than 25 questions.   Fed. R. Civ. P. 33(a).   If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.   If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.   Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.5.

Plaintiff has the responsibility for maintaining his own records of the case.   If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press this case forward, the court may dismiss it for failure to prosecute.   Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate in any discovery initiated by a Defendant.   Upon no less than five days' notice of the scheduled deposition date, Plaintiff must appear and permit his deposition to be taken and must answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order.   A plaintiff proceeding

without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order.   A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

A Defendant may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both. Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service.   Failure to respond shall indicate that there is no opposition to a motion.   Local R. 7.5.   Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendant's motion.   Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion.   Local R. 7.5, 56.1.   The failure to respond to such a motion shall indicate that there is no

opposition to the motion.   Furthermore, each material fact set forth in a Defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.   If a Defendant files a motion for summary judgment, Plaintiff will have the burden of establishing the existence of a genuine dispute as to any material fact in this case.   That burden cannot be met by reliance on the conclusory allegations contained within the complaint.   If a Defendant's motion for summary judgment is supported by affidavit, Plaintiff must file counter-affidavits if he wants to contest Defendant's statement of the facts.   If Plaintiff fails to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in the Defendant's affidavits will be accepted as true and summary judgment may be entered against Plaintiff pursuant to Federal Rule of Civil Procedure 56.

The Court must also assess Brown's filing fee.   *See* 28 U.S.C. § 1915(b).   Plaintiff's prisoner trust fund account statement reflects no average monthly deposits to or balance in his prisoner trust account. Doc. 5 at 1.   Based upon his furnished information, he does not owe an initial partial filing fee.   *See* 28 U.S.C. § 1915(b)(1) (requiring an initial

fee assessment "when funds exist," under a specific 20 percent formula). His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.  In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 17th day of January, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA